IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| FRED L. GENDEL,<br><br>        Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>        Respondent. | Case No. CV 07-425-N-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

**Introduction**

Currently pending before the Court for its consideration is Petitioner Fred Gendel's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed October 15, 2007. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will affirm the decision of the Commissioner.

**I.
Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 23, 2004, alleging disability due to degenerative disc disease, spinal

**Memorandum Decision and Order - Page 1**

stenosis, and gastrointestinal problems.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Mary Bennet Reed held a hearing on July 6, 2006, taking testimony from Petitioner, witness Sally Lockwood, and vocational expert Deborah Lapoint.  (AR 231-264.)  After the hearing, ALJ Reed left the record open for submission of additional medical evidence.  (AR 263.)  Those exhibits were received (AR 45-54), and admitted into the record.  Thereafter, ALJ Reed issued written interrogatories to the Vocational Expert for a revised Residual Functional Capacity (RFC) assessment.  (AR 50-53, 139-141.)  ALJ Reed issued a decision finding Petitioner not disabled on March 26, 2007.  (AR 14-23.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 9-10.) Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 53 years of age.  He has a high school education along with additional vocational training in electronics.  His past relevant work includes work as a data communications technician, network control operator, and field engineer.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's

degenerative disc disease of the cervical, thoracic, and lumbar region of the spine "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform his past relevant work as a data communications technician, network control operator, and field engineer. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and

**Memorandum Decision and Order - Page 3**

work experience, to engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

**Memorandum Decision and Order - Page 4**

is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner contends the ALJ erred at the second and fourth steps of the sequential evaluation process. He specifically asserts that the ALJ did not consider the impact of his periodic incontinence and his resulting need to take frequent, unscheduled restroom breaks. (Pet. Brief at 4, Docket No. 11.) The ALJ had determined at step two that Petitioner's incontinence was not severe, and thus the hypothetical posed to the vocational expert based upon the written interrogatories did not take his incontinence into account. Petitioner alleges this was error, since the RFC analysis should have included all limitations, including his incontinence. Second, Petitioner asserts that the ALJ failed to consider whether or not his skills were transferrable to his past relevant work, because Petitioner had not received any current training in the electronics field. The Court will address each of these arguments in turn.

A.   **ALJ's Evaluation of Petitioner's Chronic Incontinence**

Petitioner contends that the ALJ did not consider his periodic incontinence or chronic diarrhea, which in turn necessitated frequent restroom breaks and therefore limited his ability to work. On the contrary, the ALJ did consider Petitioner's complaint concerning his chronic diarrhea. (AR 16-17.) However, the ALJ did not find Petitioner's impairment to be severe at step two of the analysis. (AR 16.) The ALJ's conclusion that Petitioner's fecal incontinence is

not severe is supported by substantial evidence, as discussed below.

For an impairment to meet the "severity" requirement, it must "significantly limit" one's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Disability is defined, therefore, in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Medical and other evidence must be furnished to establish the existence of the disability. *Bowen*, 482 U.S. at 146.

While Petitioner did complain of diarrhea and incontinence, there is little medical evidence to support a disabling condition. Petitioner testified that his incontinence began in 1998, while he was working full time for Avista Corporation. (AR 241, 246-47.) He continued working for Avista until 2002, when the company shut down and he was laid off. (AR 245, 250.) During this period, he commuted from Sandpoint to Spokane to work, and his incontinence was controlled using Imodium, an over the counter medication. (AR 174-175.) A colonoscopy ordered by Dr. King on May 30, 2002, indicated that, other than hemorrhoids, Petitioner's colon appeared normal. (AR 242, 203.) He sought no other significant treatment for his incontinence, despite having insurance coverage through his employer at the time the problems began in 1998. (AR 239, 174-75.) The consultative exam by Dr. Lea also noted normal anal wink, tone and sensation. (AR 222-224.)

There is no support in the record for Petitioner's argument that the ALJ failed to take into

**Memorandum Decision and Order - Page 6**

account his gastrointestinal complaints and resulting incontinence.  Rather, the ALJ's conclusion to not specifically discuss this disorder in her decision is supported by substantial evidence in the record.  The record contains few references to Petitioner's incontinence other than his own testimony, and almost no treatment for it.  Petitioner was also able to commute and work a full time job with the disorder.  Accordingly, the ALJ's decision that Petitioner's incontinence is not severe is supported by substantial evidence and was not the product of legal error.

B.  **Residual Functional Capacity to Do Past Relevant Work and Hypothetical Posed to Vocational Expert**

Petitioner asserts that the ALJ's finding that he can perform his past work is in error.  The Petitioner contends that the hypothetical posed to the vocational expert did not include all his limitations, specifically his alleged incontinence, and failed to consider that his skills in the field of electronics were not current or transferrable to the current job market.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the record when making this determination.  *Id.*  Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations.  *Bayliss*, 427 F.3d at 1217.

**Memorandum Decision and Order - Page 7**

1.       **Exclusion of Incontinence in Hypothetical.**

The ALJ's residual functional capacity finding and the hypothetical she proposed to the vocational expert are supported by substantial evidence in the record. The AJL need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2000). In her hypothetical, the ALJ included limitations imposed by Petitioner's degenerative disc disease, but did not include Petitioner's periodic incontinence because of her earlier finding that the condition was not severe. (AR 16-17, 21.) Despite her earlier finding that Petitioner's incontinence was not severe, she did consider whether or not Petitioner's incontinence could impact his RFC assessment, and found that the medical evidence did not support any relation between Petitioner's spinal impairments and his gastrointestinal complaints nor did it impact his ability to work. (AR 21.)

The limitations presented by Petitioner's incontinence are not supported by substantial evidence in the record and accordingly, the ALJ did not need to include them in her hypothetical or RFC determination. There are very few references to chronic diarrhea in the record and those few references do not amount to substantial evidence for the ALJ to specifically include the disorder in her hypothetical and RFC determination. Likewise, there is not substantial evidence in the record to support Petitioner's contention that he could not work as a result of his incontinence, since he was able to do so for four years before his work with Avista terminated. The ALJ also noted that Dr. Lea examined Petitioner in regards to his incontinence, and found that the only evidence of any abnormality was due to hemorrhoids. (AR 21.)

Without substantial evidence in the record to support limitations caused by chronic diarrhea, the ALJ did not err in excluding them from her hypothetical. The ALJ then relied on

**Memorandum Decision and Order - Page 8**

the vocational expert's testimony, as permitted by the regulations, regarding Petitioner's past work as a data communications technician, network controller and field engineer. (AR 22.) *See* 20 C.F.R. § 404.1566(e).

The ALJ considered the record as a whole, incorporating her determination that Petitioner's incontinence was not severe, and included the limitations supported by substantial evidence in the record. The law provides that the ALJ does not need to include unsupported limitations, which is precisely what occurred in this case.

## 2. Lack of Current Skills or Transferable Skills.

Petitioner argues that when considering past skilled work, it requires a finding that the employee has recent skills and training to perform that work. (Pet. Brief at 5, Docket No. 11.) He claims that the hypothetical posed to the Vocational Expert did not evaluate whether Petitioner requires updated skills and training, considering his past relevant work was in the telecommunications field, and that therefore his skills are not transferrable in today's job market for the type of work considered. (*Id.*). Respondent argues that the transferability of Petitioner's skills is not a relevant inquiry at step four of the sequential analysis. (Resp. Brief at 12, Docket No. 13.)

During the hearing, the Vocational Expert identified Petitioner's past relevant work as a data communications technician, network control operator, and a field engineer. As performed, all of the jobs were classified as skilled and required medium exertive demands. (AR 261.) After the hearing, the ALJ received the medical review by Dr. Lea, who opined that, from "a neurological perspective, there are no objective abnormalities that would result in significant work-related impairments," and his RFC assessment reflected that opinion. (AR 223-228.) In

reliance upon that opinion, the ALJ propounded post-hearing written interrogatories to the Vocational Expert and a revised hypothetical, which asked whether a person with the above work history, who could only occasionally climb, balance, kneel, crouch, crawl and stoop without any other exertional or non-exertional limitations, could perform such past relevant work. (AR 139.) The Vocational Expert opined that such a person could perform all past relevant work, both as performed and as classified. (AR 139-140.)

Additionally, the ALJ asked whether the same person, if restricted to lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently, could perform any past relevant work. (AR 140-141.) These further limitations are supported by the RFC assessment given by Dr. Carraher, the examining orthopaedic physician. (AR 153-163). The Vocational Expert stated that even with the additional limitations, such a person could perform the occupation of Network Control Operator and Field Engineer, which both had light exertional requirements. (AR 141.) In reliance upon the Vocational Expert's RFC opinion, as well as Dr. Carraher's and Dr. Lea's medical opinions and RFC assessments, the ALJ found that Petitioner could perform his past work, both as it was performed and as classified. (AR 22.)

Petitioner's lack of current skills or the transferability of skills is not relevant to the ALJ's analysis in this case. Past work experience is considered "relevant if it was done within the last fifteen years, lasted long enough for [Petitioner] to learn to do it, and was substantial gainful activity. The burden is on the claimant to prove that [he] cannot perform past relevant work." *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (internal citations omitted). Petitioner's contention that the obsolescence of his skills in the telecommunications field renders him incapable of performing his past work is "contrary to express statutory provisions." *Ray v.*

**Memorandum Decision and Order - Page 10**

*Bowen*, 813 F.2d 914, 917 (9th Cir. 1987).  In *Ray*, the Ninth Circuit expressly adopted the Seventh Circuit's holding in *Wallschlaeger v. Schweiker*, 705 F.2d 191, 196 (7th Cir. 1983), that "atrophy of skills does not prevent one from performing past work for disability purposes." *Ray*, 813 F.2d at 917.  Thus, Petitioner's lack of current training in the telecommunications and computer fields is irrelevant, and it was not error for the ALJ to fail to consider a lack of current training.

Transferability of skills is only an issue "when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled." SSR 82-41, available at 1982 WL 31389, at *1.  Transferability means "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of <u>other</u> skilled or semiskilled jobs." *Id.* (emphasis added); *see also Vertigan*, 260 F.3d at 1052 (noting that the ALJ did not make a finding concerning the petitioner's transferable skills because he determined she could perform her past relevant work).  A skills transferability analysis is therefore required only if a petitioner cannot perform his past relevant work, and must apply skills learned from a previous job to a different job.  That is not the case here, since the ALJ found that Petitioner could perform his past relevant work in the telecommunications field.[1]  Accordingly, the ALJ's decision was not the product of legal error.

---

[1] The Court also notes, as did the ALJ, that Petitioner did perform work from home for CSK Communications as a computer network analyst after his alleged disability date.  (AR 237.)

**Memorandum Decision and Order - Page 11**

V.
**Conclusion**

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.

DATED: December 31, 2008

Honorable Candy W. Dale
Chief United States Magistrate Judge